IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| COLONY INSURANCE COMPANY | § | |
| | § | |
| V. | § | ACTION NO. 4:08-CV-135-Y |
| | § | |
| PEACHTREE CONSTRUCTION, LTD. and | § | |
| TRAVELERS LLOYDS OF TEXAS | § | |
| INSURANCE COMPANY | § | |

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT AND SUSTAINING OBJECTIONS

Pending before the Court are plaintiff Colony Insurance Company's ("Colony") Motion for Summary Judgment (doc. # 66), filed June 15, 2009,[1] and Colony's Objections to Defendants' Summary-Judgment Evidence (doc. # 81), filed February 9, 2009.  The Court GRANTS the summary judgment motion and SUSTAINS the objections.

I. BACKGROUND

In 2005, defendant Peachtree Construction, Ltd. ("Peachtree"), entered into a contract with the Texas Department of Transportation ("TDOT") to repave a portion of a road in Parker County, Texas.  Peachtree's general-liability insurance policy was issued by defendant/third-party plaintiff Travelers Lloyds of Texas Insurance Company ("Travelers"). The policy ("the Travelers-Peachtree policy") is a standard occurrence-based policy and provides coverage for bodily injury and property damage caused by an occurrence during the policy period.  (Resp. App. 84.)  The Travelers-Peachtree policy includes a pro-rata or other-insurance clause:

---

[1]Colony originally filed its summary-judgment motion December 10, 2008, but the effective filing date was changed to June 15, 2009, for administrative purposes.

If other valid and collectible insurance is available to the insured for a loss we cover . . . , our obligations are limited as follows:

**a.      Primary Insurance**

This insurance is primary except when b. below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in **c.** below.

**b.      Excess Insurance**

This insurance is excess over:

(1)      Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a)      That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

. . . .

(2)      Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment or an endorsement.

When this Insurance is excess, we will have no duty . . . to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit."  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss . . . .

. . . .

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance . . . .

**c.      Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes

> equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.
>
> If any other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

(Resp. App. 94.)  Peachtree's excess-insurance policy was issued by intervenor Great American Insurance Company ("GAIC").

Peachtree subcontracted with Cross Roads, L.P. ("Cross Roads"), to provide construction signs, barricades, and warning devices for the construction site.  The subcontract required Cross Roads to maintain general-liability and excess-liability insurance, which would be "primary over any other insurance carried separately by [Peachtree] and [TDOT]."  (Colony's 1st Am. Compl. Ex. A at Article 9.)  Further, Cross Roads agreed to indemnify Peachtree "against all liability and claims for death of or injury to any person, . . . including expenses and attorneys fees related thereto, arising or alleged to arise out of or in any way related to this subcontract or [Cross Roads's] performance of the sublet work or other activities of [Cross Roads] ."  (Colony's 1st Am. Comp. Ex. A at Article 10.)  Cross Roads's primary insurer was plaintiff Colony Insurance Company.  Like the Travelers-Peachtree policy, Colony's policy ("the Colony-Cross Roads policy") was a general-liability policy with an other-insurance clause.  (Resp. App. 16, 24-25.) The Colony-Cross Roads policy also included an additional-insured endorsement for "owners, lessees or contractors":

> An [i]nsured is . . . any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.  Such person or organization is an additional insured only with respect to liability arising out of your ongoing operations performed for that insured.  A person's or organization's status as an insured under this endorsement ends when your operations for that insured are completed.

(Resp. App. 58.)  Peachtree was an additional insured under Cross Roads's primary and excess policies.  Thus, the additional-insured endorsement limited coverage for Peachtree, the general contractor and an additional insured, to liability "arising out of" Cross Roads's ongoing operations.  It also included an other-insurance clause that was identical to one in the Travelers-Peachtree policy.  Cross Roads's excess insurer was third-party defendant Scottsdale Insurance Company ("Scottsdale").

On September 15, 2005, during Peachtree's repaving project, Bryan Don Lee lost control of his motorcycle on the Parker County road and crashed.  He died as a result of the accident. Lee's wife filed a wrongful-death suit ("the underlying suit") against Peachtree for negligence and gross negligence in causing her husband's death by, among other lapses, "failing to use required and reasonable signage, barricades, and warnings to drivers of the hazardous drop-off." (Resp. App. 3.)  Peachtree filed a third-party petition, joining Cross Roads as a party in the underlying suit.  Peachtree requested that Colony, as Cross Roads's primary insurer, defend the underlying suit as an additional insured.  Colony agreed with a reservation of rights regarding whether it had a duty to defend or indemnify Peachtree.  The underlying suit settled during mediation for $2,000,000.  Of that sum, Travelers contributed $1,000,000, which was the policy limit, on behalf of Peachtree; GAIC contributed $650,000 on behalf of Peachtree; and Colony contributed $350,000 on behalf of Cross Roads.

Colony filed suit in this Court against Peachtree and Travelers, seeking a declaratory judgment that Colony does not owe Peachtree a duty to defend or indemnify in the underlying lawsuit as an additional insured because Cross Roads was not a party to the underlying lawsuit. Peachtree and Travelers filed a counterclaim seeking the opposite declaration by this Court. Travelers and Peachtree filed a third-party complaint against Scottsdale, seeking a declaratory

judgment that Scottsdale had a duty to indemnify Peachtree in the underlying suit as an additional insured and that Scottsdale's policy is primary to Peachtree's policies issued by Travelers and GAIC.   GAIC filed a complaint in intervention against Colony and Scottsdale, seeking a declaratory judgment that Colony had a duty to defend and indemnify Peachtree in the underlying suit as an additional insured and that Cross Roads's policies issued by Colony and Scottsdale are primary to Peachtree's policies issued by Travelers and GAIC.

This Court dismissed GAIC's complaint in intervention against Colony and Travelers and Peachtree's third-party complaint based on the inclusion of the pro-rata clauses in the policies.[2]  Colony now seeks judgment as a matter of law that Colony did not owe Peachtree a duty to defend or indemnify in the underlying suit.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).   In this case, Colony does not present a characteristic no-evidence point that would allow it to prevail on summary judgment.   Rather, Colony claims that all the evidence necessary to decide its claim is in the record and that it is entitled to judgment because all that remain for determination are questions of law, i.e., the interpretation of the insurance policies.

Summary judgment is in fact an appropriate mechanism for resolving issues of law arising from a materially complete factual record.  *See Trevino v. Yamaha Motor Corp.*, 882 F.2d 182, 184 (5th Cir. 1982).   Furthermore, disputes over the legal inferences to be gleaned from the

---

[2]Peachtree, Travelers, and GAIC attempted to appeal these orders, but the appeal was dismissed for lack of jurisdiction.  *See Colony v. Peachtree*, No. 09-10259, slip op. at 2 (5th Cir. Apr. 29, 2009).

facts in evidence will not prevent summary judgment; thus, where a nonmovant merely debates the consequences flowing from admitted facts, summary judgment is proper. *See Beck v. Somerset Technologies, Inc.*, 882 F.2d 993, 998 (5th Cir. 1989).  It is also clear that "[w]hen everything that can be adduced at trial is before the judge . . . and the parties, while urging conflicting ultimate facts or conclusions, have no evidentiary disputes, a trial serves no useful purpose." *Brown v. United States*, 890 F.2d 1329, 1334 (5th Cir. 1989) (citing *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1197 (5th Cir. 1986)).  Summary judgment is always appropriate when there is no need to put the parties or the Court to the time and expense of a trial.

## III.  DISCUSSION

Under Texas law, which the parties do not dispute applies in this case, insurance policies are interpreted according to the ordinary rules of contract interpretation. *See Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998).  The policy terms are given their plain, ordinary meaning unless the policy itself shows that the parties intended the terms to have a different, technical meaning. *See Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001).  The duty to defend and the duty to indemnify are distinct, and the duty to defend is broader than the duty to indemnify. *See id.*; *St. Paul Ins. Co., v. Tex. Dep't of Transp.*, 999 S.W.2d 881, 884 (Tex. App.—Austin 1999, pet. denied).

### A.  The Duty to Defend

The insurer's duty to defend is governed by the eight-corners rule, which provides that the duty to defend is determined solely from the terms of the policy and the pleadings of the entity or person asserting claims against the insured in the underlying suit. *See Mid-Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 212 (5th Cir. 2009).  To invoke the duty to defend here,

6

the insured, Peachtree, has the burden to show that the factual allegations in the underlying suit **potentially** support a covered claim.  *See id.* at 528; *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 461, 471 (5th Cir. 2001).

The truth or falsity of the factual allegations is not relevant.  *See GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006).  If the underlying suit alleges facts that may fall within the scope of coverage, the insurer has a duty to defend.  *See Northfield Ins. Co. v. Loving Home Care*, 363 F.3d 523, 528 (5th Cir. 2004); *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).  Conversely, if the underlying suit does not allege facts within the scope of policy coverage, an insurer has no duty to defend.  *See Nat'l Union*, 939 S.W.2d at 141.  Extrinsic evidence to determine an insurer's duty to defend may be considered only if (1) it is impossible to determine whether coverage is potentially implicated and (2) the extrinsic evidence does not contradict the plaintiff's allegations in the underlying suit or is not solely related to an issue of coverage.  *See Northfield*, 363 F.3d at 531.  Once the insured meets its burden to show that the alleged facts in the underlying suit state a potential claim against it, to defeat the duty to defend, the insurer (here, Colony) bears the burden of showing that the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of all claims, also within the confines of the eight-corners rule.  *See id.* at 528.  Whether an insurer is obligated to defend an insured is a question of law for this Court.  *See State Farm Lloyds v. Kessler*, 932 S.W.2d 732, 736 (Tex. App.—Fort Worth 1996, writ denied).

In the underlying suit, Lee raised claims for negligence and gross negligence solely against Peachtree arising from Peachtree's alleged failure to prevent drop-off at the edge of the lane during construction and failure to use proper warning signage and barricades.  (Resp. App.

1-5.)  As pointed out by Colony, the claims in the underlying suit do not raise allegations against Cross Roads or any subcontractor.  (Summ. J. Br. 18; Reply 4.)  Peachtree, Travelers, and GAIC argue that extrinsic evidence, namely the subcontract between Peachtree and Cross Roads and Peachtree's third-party petition against Cross Roads, should be considered to show that the claims in the underlying suit necessarily implicate Colony's duty to defend as Cross Roads's primary insurer.  (Resp. 11-12.)  However, this extrinsic evidence contradicts the facts alleged in the underlying suit.[3]  The underlying suit asserts claims against Peachtree for Peachtree's failure to prevent drop-off conditions adjacent to the construction site and to use warning signs and barricades.  These claims of faulty work solely by Peachtree are excluded from coverage under the other-insurance clause and the additional-insured endorsement in the Colony-Cross Roads policy.  Faulty workmanship by a subcontractor that might fall under the subcontractor exception in the Colony-Cross Roads policy is not mentioned in the petition.  Because the petition in the underlying suit only alleges facts against Peachtree and, thus, are excluded from the Colony-Cross Roads policy, Colony is not required to defend Peachtree.  *See Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654-55 (Tex. 2009); *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, No. 14-05-486-CV, 2006 WL 3040756, at *4-5 (Tex. App.—Houston [14th Dist.] Oct. 26, 2006, pet. granted).  The limited exception to the eight-corners rule does not apply here.

## B.  THE DUTY TO INDEMNIFY

The duty to indemnify is triggered by the actual facts that establish liability in the underlying suit.  *See Columbia Cas. Co. v. Ga. & Fla. RailNet, Inc.*, 542 F.3d 106, 111 (5th Cir.

---

3As such, this extrinsic evidence, attached as part of Peachtree, Travelers, and GAIC's summary-judgment response appendix, is improper.  This Court sustains Colony's objection to this evidence under the eight-corners rule.

2008). The eight-corners rule does not apply to the duty to indemnify. However, because the underlying suit does not allege facts covered by the Colony-Cross Roads policy, even conclusive proof of the factual allegations asserted would not trigger coverage by Colony for Peachtree under the Colony-Cross Roads policy. *See Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997). Thus, there is no duty to indemnify. *See generally Carolina Cas. Ins. Co. v. Sowell*, 603 F. Supp. 2d 914, 935 (N.D. Tex. 2009) (holding because duty to defend is broader than duty to indemnify, the absence of duty to defend generally forecloses duty to indemnify).

## C. REIMBURSEMENT

In its motion for summary judgment, Colony requests that this Court declare that it is entitled to reimbursement from Travelers of all defense costs, including necessary attorney's fees, it incurred in defending Peachtree in the underlying suit until the date of the settlement. (Mot. for Summ. J. 3.) As pointed out by Peachtree and Travelers, Colony did not reserve in the Colony-Cross Roads policy the right to seek reimbursement of defense costs expended on non-covered claims. (Resp. App. 7-68; Supp. Resp. 2-3.) Colony does not dispute this in any of its filings to this Court. Thus, Colony is not entitled to reimbursement for its costs incurred in defending Peachtree in the underlying suit.

## IV. CONCLUSION

The eight-corners rule forbids this Court from considering extrinsic evidence, i.e., the subcontract between Peachtree and Cross Roads and Peachtree's third-party petition, in determining Colony's duty to defend Peachtree. Thus, the allegations of the underlying suit, which are solely against Peachtree, and the express terms of the Colony-Cross Roads policy do

not invoke Colony's duty to defend.  *See Pine Oak*, 279 S.W.3d at 655-56.  Likewise, because there are no allegations against Cross Roads in the underlying suit, even if all allegations were to be proven true, coverage would not be triggered under the Colony-Cross Roads policy.  There is no duty to indemnify as a matter of law.  Because Colony has shown its right to a declaratory judgment regarding coverage, judgment shall be entered in its favor.  For these reasons, Peachtree's amended counterclaim and request for declaratory relief against Colony are dismissed.

SIGNED October 14, 2009.

_Terry R. Means_____

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE